IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2022 Session

## XINGKUI GUO v. JON DAVID ROGERS

**Appeal from the Circuit Court for Davidson County**
**No. 18C2570     Thomas W. Brothers, Judge**

---

### No. M2020-01209-COA-R3-CV

---

This appeal concerns a claim of legal malpractice. Xingkui Guo ("Plaintiff") filed a lawsuit for legal malpractice in the Circuit Court for Davidson County ("the Trial Court") against his former attorney Jon David Rogers ("Defendant"). Defendant filed an answer denying Plaintiff's allegations as well as a counterclaim alleging that Plaintiff failed to pay him in full pursuant to the terms of their agreement. Defendant later filed motions for summary judgment as to both Plaintiff's complaint against him and his counterclaim against Plaintiff. The Trial Court granted Defendant's motions for summary judgment. Plaintiff appeals. We hold, *inter alia*, that there is no genuine issue of material fact necessitating trial. The undisputed material evidence shows that Plaintiff's loss in the underlying lawsuit was not due to negligence in Defendant's representation. The undisputed material evidence shows further that Plaintiff breached his retainer agreement with Defendant by failing to pay him in full pursuant to the terms of the agreement. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Xingkui Guo, Nashville, Tennessee, Pro Se Appellant.

Jon David Rogers, Hendersonville, Tennessee, Pro Se Appellee.

# OPINION

## Background

In October 2018, Plaintiff filed a complaint in the Trial Court alleging legal malpractice against his former attorney, Defendant. Plaintiff alleged that Defendant failed to meet a deadline in Plaintiff's legal matter; failed to adequately research the matter; held himself out as Plaintiff's attorney but did not act in Plaintiff's best interest; missed filing deadlines; and lacked understanding of fundamental legal doctrines or procedures. Plaintiff's most significant allegation, which he has repeated throughout this case, is that he lost the underlying lawsuit because Defendant failed to bring to the attention of the trial judge in that matter, Judge Joe P. Binkley, Jr., Judge of the Fifth Circuit Court for Davidson County, evidence that a criminal charge against Plaintiff had been dismissed and judicially expunged. Plaintiff contends this dismissal and judicial expungement was a favorable outcome for purposes of his malicious prosecution claim. In April 2017, Judge Binkley entered an order in the underlying case stating as follows, in relevant part:

> In regard to this favorable outcome, the court cited *Wallace v. Kato* in which the Supreme Court of the United States ruled, "[I]n order-to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, *expunged by executive order* (emphasis added), declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 127 S.Ct 1091 (2007). This Court interprets *Wallace* to rule that an expungement by executive order or executive pardon is a favorable outcome for purposes of the Plaintiff's Malicious Prosecution claim. However, the Court noted that Plaintiff failed to show that a *judicial expungement* (emphasis added) is analogous or treated also as a "favorable outcome" for the Plaintiff's malicious prosecution claim. Therefore, the Defendant['s] Motion for Summary Judgment as it pertains to the Malicious Prosecution claim is GRANTED and this claim is dismissed with prejudice.

For his part, Defendant filed an answer denying Plaintiff's claim of legal malpractice as well as a counterclaim for damages. In his counterclaim, Defendant alleged breach of contract and intentional misrepresentation arising from Plaintiff's failure to pay him in full pursuant to the terms of their written retainer agreement. Defendant alleged, in part:

At the case at bar, Parties agreed to the representation of Plaintiff by Defendant for a sum of eight-thousand Dollars ($8,000.00) to carry through the litigation that had been in progress for, at the time, over three and a half years. Plaintiff and Defendant negotiated that the payment of said fee would be divided into three portions to be paid on specific dates. Plaintiff then unilaterally refused to tender the remainder of the final one-thousand Dollars ($1,000.00) without justification and without any evidentiary basis solely because Plaintiff claims the terms of the agreement changed without a basis to allege so. By refusing to honor the full-terms of the retainer agreement, Plaintiff's actions cause[d] an injury to Defendant by denying him payments to the contract as agreed. Such a failure to adhere resulted in an injury to Defendant for which Plaintiff is responsible.

Additional procedural history unfolded, of which we set out the pertinent events. In October 2019, Defendant filed a motion for summary judgment, his third in this matter, as to Plaintiff's complaint. Defendant's prior motion for summary judgment failed because it was not properly supported by a statement of undisputed material facts. Defendant then filed a statement of undisputed material facts in support of his motion for summary judgment, which included the following:

1. Plaintiff's original complaint alleging defamation against the original defendants in 13C2340 was dismissed solely because an independent set of facts supporting a count of defamation against the original proposed new defendants did not exist. At no point did the Order of April 24, 2017 cite any conduct or error on the part of the Defendant, which caused the dismissal of the aforementioned count.
2. Plaintiff's original complaint alleging malicious prosecution against the original defendants in 13C2340 was dismissed solely because the evidence did not exist to demonstrate to the court that the Plaintiff enjoyed a favorable outcome to the alleged prosecution which was alleged to have been malicious. At no point did the Order of April 24, 2017 cite any conduct or error on the part of the Defendant, which caused the dismissal of the aforementioned count.
3. Plaintiff's original complaint alleging tortious interference with a business relationship against the original defendants in 13C2340 was dismissed solely because there were insufficient facts to meet the standard required for a prima facie case of tortious interference with a business relationship pursuant to Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002). Specifically, that an existing business relationship with specific third parties or a prospective relationship with and identifiable class of third persons, evidence of defendants' improper motive of improper means and the

-3-

defendants' knowledge of a relationship (with a third party) and not mere awareness of the Plaintiff's business dealings with others in general. At no point did the Order of April 24, 2017 cite any conduct or error on the part of the Defendant, which caused the dismissal of the aforementioned count.

4. Plaintiff's original complaint alleging civil conspiracy with a business relationship against the original defendants in 13C2340 was dismissed solely because the Plaintiff failed to provide a sufficient evidentiary basis to demonstrate that the knowledge the original defendants had with the original proposed defendants arose to the level of collusion to create a claim of civil conspiracy. Specifically, the original defendants acknowledged, that the original defendants and original proposed co-defendants were in communication as proposed co-defendant Vivian Wang was an interpreter for the original defendants; however Plaintiff was unable to present evidence that such a relationship created the requisite elements to satisfy a claim of civil conspiracy. At no point did the Order of April 24, 2017 cite any conduct or error on the part of the Defendant, which caused the dismissal of the aforementioned count.

5. The relation-back argument as the basis to add the original proposed co-defendants relying on mistake as a legal basis to prevail on said argument, was denied solely because the identity of the proposed co-defendants was known or should have been known to the Plaintiff from the inception of the action as the proposed co-defendants were in communication with the original defendants as the former was an attorney and interpreter for the latter. At no point did the Order of April 24, 2017 cite any conduct or error on the part of the Defendant, which caused the dismissal of the aforementioned count.

(Footnotes omitted).

Defendant's motion for summary judgment was set to be heard on January 31, 2020. On January 21, 2020, Plaintiff filed a motion seeking to continue the summary judgment hearing. Plaintiff asserted that he needed more time to prepare a response as he only received a transcript of his November 19, 2019 deposition of Defendant on January 18, 2020. Plaintiff also cited "material and competent" evidence he expected to receive from attorneys who had been involved in his previous matter. Nevertheless, the January 31, 2020 summary judgment hearing proceeded as scheduled. The Trial Court entered an order denying Plaintiff's request for a continuance, stating:

> Present were Plaintiff and Defendant. Following the presentment of exhibit evidence and the submission of an "Order for the Expungement of Criminal Offender Record" in Case #GS564829, as well as argument from

both Parties, this Honorable Court did determine that the Plaintiff's intent to obtain additional evidence was insufficient to warrant a continuance and that Defendant's Motions for Summary Judgment would proceed as docketed. This Honorable Court took note of the additional time, above and beyond the thirty-seven (37) day period afforded to Plaintiff in preparation for Defendant's Summary Motion hearings scheduled for January 31, 2020.

In February 2020, the Trial Court entered an order granting Defendant's motion for summary judgment with regard to Plaintiff's complaint. The Trial Court stated, as relevant:

> Present were Plaintiff and Defendant. Following the presentment of argument by both Parties, this Court did find the following:
> • Plaintiff had failed to respond to Defendant's "Undisputed Issues of Material Fact" filed contemporaneously with his Motion for Summary Judgment. Thus this Court was compelled to treat said Issues of Fact as admitted.
> • The Fifth Circuit Court, in its dismissal of the underlying action, while being incremental, was entirely predicated upon various legal determination and reasoning and at no time was there any evidence cited by the Fifth Circuit to suggest malpractice on the part of Defendant.
> • Plaintiff failed to properly respond to Defendant's Motion for Summary Judgment with appropriate affidavits or other similarly-suitable proof or argument.
> • Plaintiff has failed to meet the *Rye* standard of providing sufficient evidence of the existence of any genuine issue of material fact to support a claim of legal malpractice against the Defendant.
> • A claim of professional malpractice, requires some form of expert opinion, which the Plaintiff failed to provide.
> • In the interests of judicial economy and efficiency, the final dismissal of Plaintiff's claim shall be effective upon the final date of disposition of Defendant's Counter Claim for breach of contract. However, all claims brought by Plaintiff are, effective January 31, 2020 rendered null and shall be dismissed upon the effective date of the disposition of Defendant's counter-claim.
> Therefore, this Court finds Defendant's Motion for Summary Judgment as it pertains to Plaintiff's action against Defendant as being well-taken and thus, Defendant's Motion for Summary Judgment is GRANTED.

Notwithstanding the Trial Court's grant of summary judgment to Defendant as to Plaintiff's complaint, Plaintiff later sought leave to amend his complaint to add additional claims. The Trial Court denied Plaintiff's motion to amend in a May 2020 order. Plaintiff

also filed a motion for leave to file supplemental pleadings, seeking to add a claim of defamation regarding a statement Defendant made during his deposition. Meanwhile, Defendant filed a motion for summary judgment with respect to his counterclaim against Plaintiff. Defendant's statement of undisputed material facts read:

1. Plaintiff and Defendant entered into a written retainer agreement specifying that eight-thousand Dollars ($8,000.00) would be paid to Defendant by Plaintiff at a set of stated dates in installments.
2. Said retainer Agreement specifies that any amendments to the fee structure or the basis for said fees must be entered into the document.
3. No "acceleration" of Plaintiff's case as alleged by Plaintiff is stated or implied in any part of the Retainer, which serves as the sole piece of evidence establishing the Parties['] contractual relationship.

(Footnotes omitted). Defendant also filed an affidavit specifying that Plaintiff failed to pay him in full pursuant to the terms of their agreement. In June 2020, the Trial Court entered an order granting Defendant's motion for summary judgment with respect to his counterclaim and denying Plaintiff's motion for leave to file supplemental pleadings, stating in part:

Defendant's Motion for Summary Judgment

This Honorable Court does find that a legal and enforceable contract between Plaintiff and Defendant exists as manifested in the writing of the retainer agreement between Defendant and Plaintiff. That the terms of said written retainer agreement are the sole contract and terms thereof entered into between the Parties.

Moreover, Plaintiff has failed to provide any evidence, admissible under the Parol Evidence Rule, which, in substance, governs the extent to which parties may introduce evidence of a prior or contemporaneous agreement to modify, explain or supplement the contract at issue. Accordingly, this Honorable Court fails to find any evidence proffered or entered into the record that would allow the Plaintiff to assert that either a separate verbal or written contract or verbal amendment to the existing contract exists.

Finally, as there is no enforceable contract or amendment outside the retainer agreement entered into between the Parties, it is a matter of law alone as to whether Plaintiff's failure to satisfy his obligations under the contract constitute a remedy available at law for the Defendant.

This Honorable Court does find that no genuine issue of material fact exists and that as a matter of law, Defendant's Motion for Summary

-6-

Judgment in Favor of Defendant's Counter-Complaint is WELL-TAKEN and is HEREBY GRANTED.

### Plaintiff's Motion to Amend

Plaintiff filed his motion as Motion for Leave to File Supplemental Pleadings. However the nature of the relief sought is that of a motion to amend, and shall be treated as such.

Plaintiff alleges that a cause of action of defamation, specifically slander, be added to Plaintiff's original complaint, alleging legal malpractice, which was dismissed on January 31, 2020 by granting Defendant's Motion for Summary Judgment pertaining to Plaintiff's Complaint. Plaintiff alleges that sworn statements, at Defendant's deposition, conducted by Plaintiff, constituted said defamation.

This Honorable Court finds that the nature of the allegations raised by Plaintiff are frivolous as at least one element of defamation, namely publication, is absent from Defendant's conduct and thus a claim of defamation, if otherwise claimed in an original pleading or an amended one, would not survive a motion to dismiss or summary judgment. Specifically, publication is not satisfied by statements made in a legal proceeding, for which a wide latitude of judicial privilege for witnesses and parties exist, but also, the fact that there is no evidence presented that aside from said deposition, Defendant did not make any statements, oral or written into the general public, requires this Honorable Court to conclude that no valid claim for defamation exists. Moreover, as Plaintiff's Motion is one of amendment, the granting of such a motion would also require that Plaintiff's original complaint be active before this or another court within Davidson County, Tennessee. As Plaintiff's complaint was dismissed through summary judgment in January of 2020, there is no complaint to amend.

Accordingly, Plaintiff's Motion to Amend is NOT well-taken.

At this point, there remained outstanding in the case only what the Trial Court characterized as a motion to alter or amend filed by Plaintiff with respect to the Trial Court's order granting Defendant's motion for summary judgment as to Plaintiff's complaint. In August 2020, the Trial Court entered its final order ruling in favor of Defendant. In its order, the Trial Court stated:

**THIS MATTER**, came before this Honorable Court on July 10, 2020 for hearing on Plaintiff's Motion to Alter or Amend the Order of Summary Judgment entered on or about January 31, 2020 as it pertained to Plaintiff's Complaint for legal malpractice.

## Factual Summary

As a brief synopsis of the relevant history of this case, the Court would state:

1. This action was filed initially with this Honorable Court on or about October 8, 2018. In the single-count complaint, Plaintiff alleged a claim of legal malpractice against the Defendant.

2. Defendant filed his answer and counter-complaint on or about October 15, 2018 alleging as its single-count a breach of contract claim against Plaintiff for unpaid legal fees.

3. Numerous Case management conferences were heard by the Special Master, most-notably in May of 2019 for a discovery-dispute resolution conference.

4. Written discovery between the parties was completed in August of 2019.

5. Plaintiff deposed Defendant on November 19, 2019.

6. Defendant did not engage in depositional discovery.

7. No Party engaged in expert witness depositions and no expert witnesses were identified or presented to this Honorable Court by either Party.

8. Defendant did file a Motion for Summary Judgement as it pertained to Plaintiff's Complaint in March of 2019 and served the Plaintiff. This motion was denied as written discovery was not yet complete.

9. Defendant filed a second Motion for Summary Judgment as it pertained to Plaintiff's Complaint in August of 2019 and served the Plaintiff, which was heard on September 27, 2019. This motion was denied as Defendant failed to include a Statement of Undisputed Material Facts, mandated under T.R.C.P. 56.

10. Defendant filed a third Motion for Summary Judgment as it pertained to Plaintiff's Complaint on October 25, 2019 and served the Plaintiff. This motion was heard on January 31, 2020. The Court found the Motion to be well-taken and granted said motion. This Court does incorporate the facts and ruling of the January 31, 2020 Order into this Final Order.

11. At the January 31, 2020 hearing this Court took notice of the failure of Plaintiff to respond to Defendant's Statement of Undisputed Material Facts, and thus said statement was admitted. Plaintiff failed to raise the issue of the Statement of Undisputed Material Facts in his response to Defendant's Motion for Summary Judgment nor in his oral arguments before the Court on January 31, 2020.

12. Plaintiff, on February 27, 2020, approximately twenty-eight days after the Order Granting Defendant's Motion was entered, did file a response to Defendant's Statement of Undisputed Material Facts.

13. Defendant filed a Motion for Summary Judgment as it pertained to Defendant's Counter-Complaint against Plaintiff on February 1, 2020 and served the Plaintiff. This Motion was heard, via the video conference platform Jabber on June 12, 2020. This Court found the Motion to be well-taken and granted said motion. This Court does incorporate the facts and ruling of the June 12, 2020 Order into this Final Order.

14. Plaintiff filed a Motion for Leave to Amend pertaining to Plaintiff's complaint on May 18, 2020 and served the Defendant. This Motion was heard in the aforementioned Jabber hearing on June 12, 2020. The singular Order from that hearing as mentioned in Paragraph 13 is likewise incorporated, insofar as the facts determined and ruling held, into this Final Order.

## Plaintiff's Motion to Alter or Amend

1. This Court does find that Plaintiff's Motion is most-properly analyzed pursuant to T.R.C.P. 54.02 as it seeks to alter or amend an order of summary judgment. This determination is made based upon the holding of the principal case on point *Harris v. Chern*, which adopts a test for evaluating the propriety of amending the granting of a summary judgment motion. This test requires an inquiry, where applicable into:

    1) Movant's efforts to obtain evidence to respond to the motion for summary judgement;

    2) The importance of the newly submitted evidence to the movant's case;

    3) The explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment;

    4) The likelihood that the nonmoving party will suffer unfair prejudice, and;

    5) Any other relevant factor.[1]

2. Plaintiff in this case, argues that he was improperly served by Defendant causing Plaintiff to overlook the Defendant's Statement of Undisputed Material Facts (hereafter referred to as the Statement).

---

[1] *Harris v. Chern*, 33 S.W.3d 741, 742 (Tenn. 2000)

3. This Court finds that the proffered response to Defendant's Statement of Undisputed Material Facts does not constitute newly-produced evidence pursuant to T.R.C.P. 54.02.

4. This Court fails to find the Plaintiff credible insofar as his assertions proffered to support his contention that he was not served with a copy of Defendant's Statement of Undisputed Material Facts. It is clear from the record, that said Statement was effectively and constructively served upon the Plaintiff by the three means of mailing via U.S. Mail, electronic mail, and the Davidson County Circuit Court eFile system.

5. Any or all of these means would have provided Plaintiff with notice of this Statement having been filed. Moreover, Plaintiff was present before this Court on September 27, 2019 regarding Defendant's first Motion for Summary Judgment and was aware that the basis for the denial of Defendant's Motion at that time was due to the failure of Defendant to submit a Statement of Undisputed Material Facts contemporaneously with his Motion for Summary Judgment.

6. This Court finds that, at a minimum, the Plaintiff's efforts to obtain evidence to respond to the Motion for Summary Judgment were inadequate and inappropriate when Plaintiff was or should have been aware that such a Statement was and would have been required.

7. This Court further recognizes that Plaintiff is not an attorney and is representing himself as a pro se litigant; however Plaintiff is responsible for reading and being familiar with the applicable rules as a consequence of self-representation.

8. In the event that the Plaintiff had genuinely failed to be served with a copy of the Statement, such a failure would have caused any reasonable person to properly file a motion or motions against, in this case, the Defendant, seeking relief for, what would have been, the Defendant's defect in filing his Motion for Summary Judgment.

9. This lack of a reasonable response by the Plaintiff is exacerbated in the magnitude by which this Court deems Plaintiff's Motion to be poorly-taken due to the fact that this Court made the Parties aware of the requirement for a Statement immediately-prior to the Filing of Defendant's third Motion for Summary Judgment on October 25, 2019.

10. There has been no valid explanation presented to this Court to support Plaintiff's claim that he failed to receive the Statement.

11. This Court finds no unfair prejudice to Plaintiff.

12. This Court finds no factors, which support Plaintiff's Motion as it pertains to claims that Plaintiff failed to receive the Statement and any basis for alteration or amendment of the January 31, 2020 Summary Judgment Order, which stem therefrom.

## Inadmissible Evidence

13. Plaintiff raises the allegation that Defendant failed to provide and attempted to introduce inadmissible evidence, which caused Plaintiff to suffer prejudice during the Summary Judgment Hearing of January 31, 2020. Specifically an email communication between Defendant and Plaintiff's prior attorney Mr. Todd Cole.

14. This Court finds that Plaintiff has failed to demonstrate the importance of this information and how it would support his response to Defendant's Motion for Summary Judgment nor that Plaintiff was unable to properly respond to Defendant's Motion for Summary Judgment because of the alleged failure to provide said information to Plaintiff by Defendant during the course of discovery.

15. Further, the evidence submitted at the January 31, 2020 Summary Judgment Hearing clearly indicates that Plaintiff had been provided a copy of said document during discovery.

## Conclusion

A motion to revise an order granting summary judgment is not an opportunity for the unsuccessful party to the granting of said motion, and opportunity to re-argue the motion. The provision of new evidence, unobtained through no fault of the Movant during discovery, is a basis to alter or amend such an order. In the present case, this Court does not find that the Plaintiff has provided such evidence, that Plaintiff has failed to demonstrate the relevance of said evidence to the success or failure of his response to Defendant's Motion for Summary Judgment and that Plaintiff is not credible in his assertions that he failed to receive a copy of Defendant's Statement of Undisputed Material Facts.

Additionally, even if this Court did accept Plaintiff's responses to Defendant's Statement filed on February 27, 2020; those responses do not constitute or create a genuine issue of material fact which the granting of Defendant's Motion would be improper. Most of Plaintiff's responses are those of opinion or belief and do not meet the requisite standard to create a genuine issue of material fact for purposes of a summary judgment determination.

This Court would re-iterate that the claim sought of legal malpractice requires, absent blatantly obvious negligence, the opinion of an expert, which has not, nor was ever provided. Plaintiff's assertion, that Judge Binkley, Judge of the Fifth Circuit would have provided a different ruling in its

-11-

dismissal of Plaintiff's claims in the underlying litigation, which gave rise to this action, had Defendant provided information to Judge Binkley. Plaintiff's continued assertion that the expungement of Plaintiff's criminal case was a favorable outcome and that had such documentation been available to Defendant and subsequently made available to the Fifth Circuit, such a favorable outcome would have resulted in a victory of Plaintiff in the underlying litigation.

This Court finds that which the Fifth Circuit did previously, and a review of the United States Supreme Court decision in *Wallace* clearly establishes the rule, that any judicial expungement or relief is not a favorable outcome for purposes of a malicious prosecution claim; indeed only an executive expungement or pardon is a favorable outcome.[2] The final disposition of this Motion is indeed the final disposition of this matter, as there are no further matters before this Court for which it may or must resolve. Accordingly, this Court finds the following:

1. Plaintiff's Motion to Alter or Amend the Summary Judgment Order of January 31, 2020 is **not well-taken** and is therefore **DENIED**.

2. The Order granting Defendant's Motion for Summary Judgment as it pertains to Plaintiff's Complaint, entered into on January 31, 2020 is incorporated herein and is deemed **FINAL** and **DISMISSED**.

3. The Order granting Defendant's Motion for Summary Judgment as it pertains to Defendant's Counter-Complaint, entered into on June 12, 2020 is incorporated herein and is deemed **FINAL** and **GRANTED** with the award and costs specified therein applicable.

4. As this matter has been fully-adjudicated and disposed of as of the entry of this Order, this matter is **DISMISSED**.

This Court did give notice to the Plaintiff that this order is appealable provided applicable Rules of Appellate Procedure are followed.

(Footnotes in original). Plaintiff timely appealed to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises the following issues on appeal: 1) whether the Trial Court erred in denying Plaintiff's motion to continue the summary judgment hearing; 2) whether the Trial Court erred in granting Defendant's motion for summary judgment with respect to Plaintiff's complaint; 3) whether the Trial Court erred in denying Plaintiff's motion to amend; and 4) whether the Trial Court erred in granting

---

[2] *Wallace v. Kato, et al.*, 549 U.S. 384 (2007)

Defendant's motion for summary judgment with respect to Defendant's counterclaim against Plaintiff.

Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare– Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the*

*summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015). In addition, "[w]hether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

Certain of the issues on appeal implicate the abuse of discretion standard of review, as well. The Tennessee Supreme Court has discussed the abuse of discretion standard of review as follows:

This Court has described the abuse of discretion standard in some detail:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

-14-

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted); *see also BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Const. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (citations omitted) ("The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen.").

*Lee Medical* provided the framework for determining whether a trial court has properly exercised its discretion:

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Lee Med.*, 312 S.W.3d at 524-25 (citing *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF*, 1988 WL 72409, at *3)); s*ee also Vodafone Americas Holdings, Inc. & Subsidiaries v. Roberts*, 486 S.W.3d 496, 514 (Tenn. 2016).

*Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305-06 (Tenn. 2020). "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017) (internal quotation marks, brackets, and citations omitted).

We first address whether the Trial Court erred in denying Plaintiff's motion to continue the summary judgment hearing. "Where, as here, a party seeks to continue a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56.07, we review the trial court's refusal to grant a continuance for an abuse of discretion." *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009). Plaintiff argues that the twelve days he had between his January 18, 2020 receipt of the transcript of his November 19, 2019 deposition of Defendant and the January 31, 2020 summary judgment hearing was insufficient time in which to prepare a response to Defendant's motion for summary judgment; that Plaintiff also was expecting subpoenaed "material evidence" from Mr. Todd Cole to be delivered on January 30, 2020; and that Plaintiff had two additional depositions to take.

Under Tenn. R. Civ. P. 56.04, Plaintiff was entitled to at least thirty days before the hearing on Defendant's motion for summary judgment. Under the local rules of Davidson County, Plaintiff was entitled to seven additional days, for a total of thirty-seven days. As it happened, Plaintiff had over three months between October 25, 2019, when Defendant filed his motion for summary judgment with respect to Plaintiff's complaint, and January 31, 2020, when the hearing on Defendant's motion was held. While Plaintiff complains that twelve days was not enough time to prepare upon receiving a copy of Defendant's November 19, 2019 deposition, Plaintiff personally conducted the November 19, 2019 deposition. He heard Defendant's answers in real time. Moreover, it was incumbent upon Plaintiff to expeditiously and diligently conduct discovery. The purpose of summary judgment is to provide, when the prerequisites are met, a timely means of resolving legal disputes. Depending on the circumstances of a case, additional time for discovery beyond that already allowed may be warranted, but parties are not entitled to utterly open-ended discovery so as to drag out summary judgment proceedings interminably.

The decision of whether to grant Plaintiff's motion to continue was a discretionary one for the Trial Court to make. We find that the Trial Court, in denying Plaintiff's motion to continue, did not apply an incorrect legal standard; did not reach an illogical or unreasonable decision; and did not base its decision on a clearly erroneous assessment of the evidence. We find further that the factual basis for the Trial Court's decision to deny Plaintiff's motion to continue is properly supported by evidence in the record; that the Trial

Court properly identified and applied the most appropriate legal principles applicable to the decision; and the Trial Court's decision was within the range of acceptable alternative dispositions. In short, we discern no abuse of discretion by the Trial Court in its decision to deny Plaintiff's motion to continue.

We next address whether the Trial Court erred in granting Defendant's motion for summary judgment with respect to Plaintiff's complaint. "It is well settled that a plaintiff in a legal malpractice action has the burden of proving: (1) the employment of the attorney; (2) neglect by the attorney of a reasonable duty; and (3) damages resulting from the neglect." *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 543 (Tenn. Ct. App. 2012) (citing *Jamison v. Norman*, 771 S.W.2d 408 (Tenn. 1989); *Sammons v. Rotroff*, 653 S.W.2d 740 (Tenn. Ct. App. 1983)). In a legal malpractice action, expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen. *Rose v. Welch*, 115 S.W.3d 478, 484 (Tenn. Ct. App. 2003). As the Tennessee Supreme Court has explained:

> In order to make out a prima facie legal malpractice claim, the plaintiff must show (1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages. *See Lazy Seven Coal Sales, Inc. v. Stone & Hinds*, 813 S.W.2d 400, 403 (Tenn. 1991); *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998). As with any tort claim, the plaintiff has the burden of proving each of these elements.

*Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001).

Plaintiff argues, first, that the Trial Court erred in deeming Defendant's statement of undisputed material facts as undisputed because Plaintiff failed to timely respond to the statement. Plaintiff contends that Defendant did not properly serve the statement of undisputed material facts upon him so he had no chance to timely respond. Plaintiff belatedly filed a response on February 27, 2020. The Trial Court found that, contrary to Plaintiff's assertions, Defendant's statement of undisputed material facts was properly served upon Plaintiff by three means: United States Mail, electronic mail, and the Davidson County Circuit Court eFile system. The Trial Court found further that Plaintiff was not credible in his assertion that he was not properly served with Defendant's statement of undisputed facts. Plaintiff takes issue with this credibility finding, arguing in his brief that it shows the Trial Court "prejudged factual issues" and "displayed prejudice." However, trial courts must and do routinely make credibility determinations. Appellate courts defer

to trial courts' assessments of in-person witness credibility absent clear and convincing evidence to the contrary. *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014). There is no hint in the record that the Trial Court had any preconceived bias against Plaintiff. From our review of the DVD video recordings of the hearings conducted below, the Trial Court treated Plaintiff with considerable courtesy and patience. The Trial Court simply did not believe Plaintiff's assertion that he was not properly served with Defendant's statement of undisputed material facts, as was the Trial Court's prerogative. We find no reversible error in the Trial Court's decision to deem Defendant's statement of undisputed material facts as undisputed.

Nevertheless, even considering Plaintiff's belated response, he has pointed to no evidence in this record that withstands Defendant's motion for summary judgment as to Plaintiff's complaint. Crucially, Plaintiff has submitted no expert proof that Defendant breached the applicable professional standard of care. Contrary to Plaintiff's insistence, this was not an obvious case of legal malpractice. The underlying lawsuit involved legal questions as to what constitutes a favorable termination for purposes of malicious prosecution; the answer is not necessarily obvious. Expert proof was required as to Defendant's duty to Plaintiff as well as Defendant's failure to meet that duty and that damages resulted from that neglect. Instead, Plaintiff has simply offered his lay opinions. Plaintiff's chief complaint is that Defendant failed to obtain his full case file from Plaintiff's former attorney. However, Plaintiff fails to explain how this, or any other of Defendant's alleged deficiencies in representation, led to Plaintiff losing his underlying lawsuit. On the contrary, the record reveals that in the underlying lawsuit, Judge Binkley ruled that a judicial expungement was not a favorable termination for purposes of Plaintiff's malicious prosecution claim. This was a legal interpretation made by Judge Binkley. Plaintiff fails to explain how Judge Binkley's interpretation of the law would have been different but for an act or omission on Defendant's part. Plaintiff's lay opinion that Defendant did a poor job on his case is not a basis for sustaining a claim of legal malpractice. We affirm the Trial Court in its grant of summary judgment in favor of Defendant with respect to Plaintiff's complaint.

We next address whether the Trial Court erred in denying Plaintiff's motion to amend. In *Kwan v. Doe*, No. M2000-03208-COA-R3-CV, 2002 WL 225897 (Tenn. Ct. App. Feb. 14, 2002), *no appl. perm. appeal filed*, this Court explained the standard of review we apply to a trial court's denial of a motion to amend once partial summary judgment is granted. The *Kwan* Court explained:

> The decision to deny leave to amend presents itself to the sound discretion of the trial judge. *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). However, the trial court's discretion is limited by the rule's provision that leave to amend "shall be freely given when justice so requires." Tenn.

R. Civ. P. 15.01; *HMF Trust v. Bankers Trust Co.*, 827 S.W.2d 296, 301 (Tenn. Ct. App. 1991). In cases where the motion to amend is not filed until after summary judgment has been granted, the motion is reviewed under a more restrictive standard than the "freely given" language provided in Tennessee Rules of Civil Procedure 15.01. *See Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994) ("[T]he presumption that leave to amend shall be freely given pursuant to [F.R.C.P. 15(a)] disappears after judgment has been entered. At this juncture, the party making a [F.R.C.P. 59(e)] motion so that it can amend its complaint had better provide the district court with a good reason to grant its motion.") (citations omitted).

*Kwan*, 2002 WL 225897, at \*4. We stated further in *Kwan* that our Supreme Court in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000) articulated the test to be applied when considering what is, in effect, a motion to "reconsider" summary judgment pursuant to Tenn. R. Civ. P. 54.02 to revise a non-final partial summary judgment, as follows:

> 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment;
> 2) the importance of the newly submitted evidence to the movant's case;
> 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment;
> 4) the likelihood that the nonmoving party will suffer unfair prejudice;
> 5) any other relevant factor.

*Kwan*, 2002 WL 225897, at \*5 (quoting *Harris*, 33 S.W.3d at 745).

After the Trial Court's grant of summary judgment in favor of Defendant as to Plaintiff's complaint, Plaintiff sought leave to file an amended complaint. Plaintiff sought to add claims of fraud, breach of contract, and defamation (although Plaintiff states in his appellate brief that he withdraws his defamation claim). Under his fraud claim, Plaintiff asserts that Defendant falsified his legal experience; did "fake work" such as failing to thoroughly read depositions; and made "fake plans" such as taking an inordinate amount of time to file an amended complaint. Under his breach of contract claim, Plaintiff asserts that Defendant failed to look for Plaintiff's case files and otherwise act diligently in breach of the retainer agreement. Plaintiff asserts further that this lack of diligence caused dismissal of Plaintiff's lawsuit. However, Plaintiff has failed to point to any newly submitted evidence that would justify permitting him to amend his complaint after it had been disposed of by summary judgment. Plaintiff continues to opine at length about Defendant's poor performance but fails to connect these alleged deficiencies to the outcome of the underlying lawsuit. Plaintiff's attempt to add additional claims represents

a mere bid to re-argue the Trial Court's grant of summary judgment in favor of Defendant. Under the *Harris v. Chern* factors, that is an insufficient basis for granting Plaintiff's motion to amend.

Whether to grant Plaintiff's motion to amend was within the Trial Court's discretion. We find that the Trial Court, in denying Plaintiff's motion to amend, did not apply an incorrect legal standard; did not reach an illogical or unreasonable decision; and did not base its decision on a clearly erroneous assessment of the evidence. We find further that the factual basis for the Trial Court's decision to deny Plaintiff's motion to amend is properly supported by evidence in the record; that the Trial Court properly identified and applied the most appropriate legal principles applicable to the decision; and the Trial Court's decision was within the range of acceptable alternative dispositions. In short, we discern no abuse of discretion by the Trial Court in its declination to grant Plaintiff's motion to amend.

The final issue we address is whether the Trial Court erred in granting Defendant's motion for summary judgment with respect to Defendant's counterclaim against Plaintiff. "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC Lifemed, Inc. v. AMC-Tennessee*, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998), *no appl. perm. appeal filed*). On this issue, Plaintiff argues that the Trial Court ignored certain verbal and implied contracts between Plaintiff and Defendant. As an example, Plaintiff points to Defendant having told Plaintiff he would pursue all angles of his case, which would likely yield a good result. Plaintiff also points to certain statements Defendant made at various points over the course of the underlying lawsuit to the effect that Defendant would take certain legal steps at certain times. Plaintiff argues that Defendant's alleged failure to take these steps means Plaintiff has the right to withhold the remaining $1,000 he owes Defendant. However, these parties had a written retainer agreement and that written agreement controls. The parties' retainer agreement contains no provision allowing Plaintiff to withhold any sums from Defendant on grounds that Defendant failed to take certain tactical, legal steps that Plaintiff wanted him to take. The statements cited by Plaintiff in no sense create a separate agreement beyond the unambiguous written retainer agreement executed by the parties. We, as did the Trial Court, look exclusively to the four corners of the parties' written retainer agreement as to what was the contract between the parties. In sum, Plaintiff must pay what he owes Defendant under the written retainer agreement. We affirm the Trial Court's grant of summary judgment in favor of Defendant as to Defendant's counterclaim for breach of contract. We affirm the judgment of the Trial Court in its entirety.

**Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Xingkui Guo, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE